## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>RYDER SYSTEM, INC. and RYDER TRUCK RENTAL, INC.,<br><br>Defendants. | Civil Action No. 2:22-cv-00160<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Fleet Connect Solutions LLC ("FCS" or "Plaintiff") files this complaint against Ryder System, Inc. ("Ryder System") and Ryder Truck Rental, Inc. ("Ryder Rental") (collectively, "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      This is a patent infringement action to stop Defendants' infringement of the following United States Patents (the "Asserted Patent") issued by the United States Patent and Trademark Office ("USPTO"), a copy of which are attached hereto as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F**, **Exhibit G**, **Exhibit H**, and **Exhibit I**:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 6,647,270<br>(the "'270 patent") | Vehicletalk |
| B. | 7,092,723<br>(the "'723 patent") | System And Method For Communicating Between Mobile Units |
| C. | 7,206,837<br>(the "'837 patent") | Intelligent Trip Status Notification |
| D. | 7,450,955<br>(the "'955 patent") | System And Method For Tracking Vehicle Maintenance Information |
| E. | 7,536,189<br>(the "'189 patent") | System And Method For Sending Broadcasts In A Social Network |

|   | U.S. Patent No. | Title |
|---|---|---|
| F. | 6,429,810 (the "'810 patent") | Integrated Air Logistics System. |
| G. | 7,742,388 (the "'388 patent") | Packet Generation Systems and Methods. |
| H. | 7,058,040 (the "'040 patent") | Channel Interference Reduction. |
| I. | 7,260,153 (the "'153 patent") | Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels. |

2.      FCS seeks injunctive relief and monetary damages.

## PARTIES

3.      Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.      Ryder System is a corporation organized and existing under the laws of the State of Florida.

5.      Ryder System has its principal place of business at 11690 NW 105th Street, Miami, Florida, 33178-1103.

6.      Ryder System can be served at its registered service address:  Corporate Creations Network Inc., 801 North US Highway 1, North Palm Beach, Florida 33408.

7.      Ryder Rental is a corporation organized and existing under the laws of the State of Florida

8.      Ryder Rental has its principal place of business at 11690 NW 105th Street, Miami, Florida, 33178-1103.

9.      Ryder Rental can be served at its registered service address:  Corporate Creations Network Inc., 801 North US Highway 1, North Palm Beach, Florida 33408.

10.      Defendants maintain one or more facilities at which they operate their businesses that are the subject of this patent infringement case at the following locations:

- 2624 East Erwin Street, Tyler, Texas, 75702;

- 405 Ambassador Row, Longview, Texas, 75604; and

- 3801 Texoma Parkway, Sherman, Texas, 75090.

These locations and (upon information and belief) other locations in this District are facilities in which Defendants operate their businesses (the "Texas Locations").

## JURISDICTION AND VENUE

11.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

12.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–285, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

13.     Venue is proper against Defendants in this District pursuant to 28 U.S.C. § 1400(b) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District at the Texas Locations.  Defendant Ryder Rental is also an agent of Defendant Ryder System that is carrying on Ryder System's business at the Texas Locations, and Defendant Ryder System has authority and control over Defendant Ryder Rental's actions, and specifically, at all relevant times has and has had the power to exert control over the business, activities, and conduct that infringes.

14.     Defendants are subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendants' substantial business in this judicial district, including: (i) At least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

15.     Specifically, Defendants intend to do and do business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, and offers their services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

16.     Defendants maintain regular and established places of business in this District.

17.     Defendants commit acts of infringement in this District, including, but not limited to, use of the Accused Instrumentalities identified below.

## THE ACCUSED INSTRUMENTALITIES

18.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

19.     Based upon public information, Defendants own, operate, advertise, and/or control the website www.ryder.com through which they advertise, sell, offer to sell, provide and/or educate customers about their products and services that provide infringing systems manufactured by Lytx, Inc. ("Lytx").  *See* **Exhibit J** and **Exhibit K**.

20.     Defendants use, cause to be used, sell, offer for sale, provide, supply, or distribute one or more fleet management and tracking solutions, including, but not limited to, the electronic logging device ("ELD") and camera solutions (SF Series and/or Surfsight AI Series) manufactured by Lytx (the "Accused Instrumentalities").  *See* **Exhibit L.**

21.     Defendants use the Accused Instrumentalities to perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various communication standards, protocols, and implementations, including, but not limited to, LTE, Bluetooth/IEEE 802.15, and IEEE 802.11 protocols and various subsections thereof (*e.g.*, 802.11ac and 802.11n).

22.    The wireless communications perform and/or implemented by the Accused Instrumentalities, among other things, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

23.    The Accused Instrumentalities provide "fleet management solutions" that "locate vehicles, protect your bottom line, address distracted driving, ensure DOT compliance, and review data from multiple systems, connecting all the dots to save you time and resources." *See* **Exhibit M.**

24.    The Accused Instrumentalities track or cause to be tracked vehicle and cargo locations and provide methods for enforcing various vehicle codes, including Department of Transportation compliance regulations.  *See* **Exhibit N.**

25.    Ryder System has recently received an Innovation Award from Lytx for its successful use of the DriveCam systems.  *See* **Exhibit O**.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,647,270**

26.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

27.    The USPTO duly issued the '270 patent on November 11, 2003 after full and fair examination of Application No. 09/659,074 which was filed September 11, 2000.  A true and correct copy of the '270 patent is attached as **Exhibit A**.  A Certificate of Correction was issued on July 27, 2004.  *See id*. a A-17.  A second Certificate of Correction was issued on September 24, 2013.  *See id*. at A-18.

28.     The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

29.     The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

30.     FCS owns all substantial rights, interest, and title in and to the '270 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

31.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '270 patent.

32.     Defendants have directly infringed one or more claims of the '270 patent by using, selling, offering to sell, providing, supplying, or distributing the Accused Instrumentalities.

33.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '270 patent.  For example, Defendants provide a system for transmitting voice or data communications comprising a plurality of data packets between a plurality of remote units, each remote unit having a unique identifier; whereby each remote unit includes:  a memory for storing a unique identifier; a transceiver for receiving a wireless communication and downconverting said received communication from RF to baseband, and for upconverting a baseband communication to RF for transmission as a transmit wireless communication; a GPS

receiver, for outputting a position signal; a microprocessor, for receiving said position signal and said downconverted communication, and for generating said baseband communication; whereby said microprocessor generates said baseband communication by constructing said data packets from a plurality of data fields, including sender information and receiver information, whereby said sender information includes: the unique identifier of the sender, and information derived from said position signal; and whereby said receiver information includes: the address of the desired remote unit.

34.     FCS has been damaged as a result of the infringing conduct by Defendants alleged above.   Thus, Defendants are liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,092,723

35.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

36.     The USPTO duly issued the '723 patent on August 15, 2006 after full and fair examination of Application No. 10/679,784 which was filed October 6, 2003.  A true and correct copy of the '723 patent is attached as **Exhibit B**.

37.     The claims of the '723 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

38.     The written description of the '723 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39.    FCS owns all substantial rights, interest, and title in and to the '723 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

40.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '723 patent.

41.    Defendants have directly infringed one or more claims of the '723 patent by using, selling, offering to sell, providing, supplying, or distributing the Accused Instrumentalities.

42.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 19 of the '723 patent.  For example, Defendants provide A system for transmitting voice or data communications between a plurality of remote units, the system having an input including the voice or data communications and user input, each remote unit comprising a unique identifier, a transceiver configured to receive data by a wireless communication and to down-convert the received data from radio frequency (RF) to baseband, and to up-convert baseband data to RF for transmission as a wireless communication, a global positioning system receiver configured to receive a position signal, a microprocessor configured to receive the position signal and the received communication, and to generate the baseband communication by constructing at least one data packet from a plurality of data fields, at least one of the data fields including information derived from the position signal, the unique identifier of a sending remote unit, and the unique identifier of a receiving remote unit, and a memory configured to store the received data, the user input including information unique to the user, and said unique identifier.

43.     FCS has been damaged as a result of the infringing conduct by Defendants alleged above.    Thus, Defendants are   liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,206,837

44.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

45.     The USPTO duly issued the '837 patent on April 17, 2007 after full and fair examination of Application No. 10/287,151 which was filed November 4, 2002.  A true and correct copy of the '837 patent is attached as **Exhibit C**.

46.     The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

47.     The written description of the '837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48.     FCS owns all substantial rights, interest, and title in and to the '837 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

49.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '837 patent.

50.    Defendants have directly infringed and continue to directly infringe one or more claims of the '837 patent by using, selling, offering to sell, providing, supplying, or distributing the Accused Instrumentalities.

51.    Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '837 patent.  For example, Defendants provide a method comprising receiving a location of a mobile communications device that is in transit to a destination, estimating the time-of-arrival bounds for said mobile communications device at said destination for a confidence interval based on said location and at least one historical travel time statistic, and sending the time-of-arrival bounds to said mobile communications device.

52.    Since at least the time of receiving the original complaint in this action, Defendants have also indirectly infringed and continue to indirectly infringe the '837 patent by inducing others to directly infringe the '837 patent.  *See* Ex. J, Ex. K, and Ex. O.  Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '837 patent by providing or requiring use of the Accused Instrumentalities. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '837 patent, including, for example, claim 1.  Such steps by Defendants included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide

users to use the Accused Instrumentalities in an infringing manner. Defendants are performing these steps, which constitute induced infringement with the knowledge of the '837 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '837 patent. Defendants' inducement is ongoing.

53.     Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of the '837 patent. *See* Ex. L. Ex. M, and Ex. N. Defendants have contributed and continue to contribute to the direct infringement of the '837 patent by its customers, personnel, and contractors. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '837 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '837 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

54.     Defendants had knowledge of the '837 patent at least as of the date when it was notified of the filing of this action.

55.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

56.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

57.     Defendants' infringement of the '837 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

58.    FCS has been damaged as a result of the infringing conduct by Defendants alleged above.    Thus, Defendants are liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

59.    FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.    FCS has and will continue to suffer this harm by virtue of Defendants' infringement of the '837 patent.    Defendants' actions have interfered with and will interfere with FCS's ability to license technology.    The balance of hardships favors FCS's ability to commercialize its own ideas and technology.    The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,450,955

60.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

61.    The USPTO duly issued the '955 patent on November 11, 2008 after full and fair examination of Application No. 11/524,858 which was filed September 20, 2006.    A true and correct copy of the '955 patent is attached as **Exhibit D**.    A Certificate of Correction was issued on September 24, 2013.    *See id*. a D-19.    A second Certificate of Correction was issued on May 1, 2018.    *See id*. at D-20.

62.    The claims of the '955 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

63.     The written description of the '955 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

64.     FCS owns all substantial rights, interest, and title in and to the '955 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

65.     Defendants have directly infringed one or more claims of the '955 patent by using, selling, offering to sell, providing, supplying, or distributing the Accused Instrumentalities.

66.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '955 patent.  For example, Defendants perform a method for tracking vehicle maintenance information by a system administrator.  The method includes identifying by the system administrator a vehicle associated with a vehicle identifier of a receiving mobile unit; determining a warning associated with the vehicle; generating baseband message data indicating the warning by constructing at least one data packet from a plurality of data fields, the data fields including a unique identifier of a transmitting mobile unit, and the vehicle identifier of the receiving mobile unit; upconverting the baseband message data to radio frequency for transmission to the receiving mobile unit; transmitting the upconverted baseband message data from the transmitting mobile unit to the receiving mobile unit, thereby indicating the warning; and receiving a confirmation of receipt from the receiving mobile unit including parsing the confirmation of receipt to confirm the warning was received.

67.     FCS has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,536,189

68.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

69.     The USPTO duly issued the '189 patent on May 19, 2009 after full and fair examination of Application No. 12/018,588 which was filed January 23, 2008.  A true and correct copy of the '189 patent is attached as **Exhibit E**.  A Certificate of Correction was issued on June 25, 2013.  *See id*. at E-22.

70.     The claims of the '189 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

71.     The written description of the '189 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

72.     FCS owns all substantial rights, interest, and title in and to the '189 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

73.    Defendants have directly infringed one or more claims of the '189 patent by using, selling, offering to sell, providing, supplying, or distributing the Accused Instrumentalities.

74.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '189 patent. For example, Defendants performs a method for a system administrator to broadcast an advisory communication to at least one remote unit.  The method includes accessing a website by a system administrator to send an advisory communication, the website comprising an audio-visual interface for inputting the advisory communication; filtering a plurality of remote units by the system administrator operating the website, the filtering being based upon at least one information field to determine from the plurality of remote units at least one of a first remote unit and a second remote unit to receive a broadcast of the advisory communication; assembling at least one packet of the advisory communication, the at least one packet comprising at least one of: a first packet comprising a data message for the first remote unit, and a second packet comprising a voice message for the second remote unit; forwarding the at least one packet to a router for transmission transmitting the at least one packet to alert at least one of the first remote unit and the second remote unit of the advisory communication; and storing, by the website, a log associated with the advisory communication.

75.    FCS has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 6,429,810

76.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

77.    The USPTO duly issued the '810 patent on August 6, 2002 after full and fair examination of Application No. 09/774,547 which was filed January 31, 2001.  A true and correct copy of the '810 patent is attached as **Exhibit F**.

78.    The claims of the '810 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of logistics and tracking systems.

79.    The written description of the '810 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

80.    FCS owns all substantial rights, interest, and title in and to the '810 patent, including the sole and exclusive right to prosecute this action and enforce the '810 patent against infringers and to collect damages for all relevant times.

81.    Defendants have directly infringed one or more claims of the '810 patent by using, selling, offering to sell, providing, supplying, or distributing the Accused Instrumentalities.

82.    Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '810 patent.  For example, Defendants perform a method of providing container status information to a user.  The method includes attaching an electronic communications unit to a shipping container; generating a transaction identification code, wherein said transaction identification code is specific to said shipping container and specific to at least one user transaction; initiating a status inquiry utilizing said

transaction identification code, wherein said user performs said initiating step; receiving said status inquiry by a ground communications system; transmitting said status inquiry to said electronic communications unit by said ground communications system; obtaining a status information response by said electronic communications unit; transmitting said status information response to said ground communications system by said electronic communications unit; and forwarding said status information response to said user by said ground communications system.

83.     FCS has been damaged as a result of the infringing conduct by Defendants alleged above.  Defendants are liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,742,388

84.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

85.     The USPTO duly issued the '388 patent on June 22, 2010 after full and fair examination of Application No. 11/185,665 which was filed July 20, 2005.  A true and correct copy of the '388 patent is attached as **Exhibit G**.

86.     The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

87.     The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

88.     FCS owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

89.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

90.     Defendants have directly infringed and continue to directly infringe one or more claims of the '388 patent by using, selling, offering to sell, providing, supplying, or distributing the Accused Instrumentalities.

91.     Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent.  For example, Defendants perform a method including generating a packet with a size corresponding to a protocol used for a network transmission, wherein the packet comprises a preamble having a first training symbol and a second training symbol.  The method further includes increasing the size of the packet by adding subcarriers to the second training symbol of the packet to produce an extended packet, wherein a quantity of subcarriers of the second training symbol is greater than a quantity of subcarriers of the first training symbol; and transmitting the extended packet from an antenna.

92.     Since at least the time of receiving the original complaint in this action, Defendants have also indirectly infringed and continue to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent.  *See* Ex. J, Ex. K, and Ex. O.  Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants' employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents,

the '388 patent by providing or requiring use of the Accused Instrumentalities.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1.  Such steps by Defendants included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendants are performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '388 patent.  Defendants' inducement is ongoing.

93.    Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of the '388 patent.  *See* Ex. L. Ex. M, and Ex. N.  Defendants have contributed and continue to contribute to the direct infringement of the '388 patent by their customers, personnel, and contractors.  The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

94.    Defendants had knowledge of the '388 patent at least as of the date when they were notified of the filing of this action.

95.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

96.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

97.     Defendants' infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

98.     FCS has been damaged as a result of the infringing conduct by Defendants alleged above.   Thus, Defendants are liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

99.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendants' infringement of the '388 patent.  Defendants' actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 7,058,040

100.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

101.    The USPTO duly issued the '040 patent on June 6, 2006 after full and fair examination of Application No. 09/962,718 which was filed September 21, 2001.  A true and correct copy of the '040 patent is attached as **Exhibit H**.

102.    The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting data transmission methods.

103.    The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

104.    FCS owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

105.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

106.    Defendants have directly infringed and continue to directly infringe one or more claims of the '040 patent by using, selling, offering to sell, providing, supplying, or distributing the Accused Instrumentalities.

107.    Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent.  For example, Defendants, using the Accused Instrumentalities, perform a method for data transmission over first and second media that overlap in frequency. The method includes computing one or more time division multiple access (TDMA) time-slot channels to be shared between the first and second media for data transmission; allocating one or more time-slot channels to the first medium for data

transmission; allocating one or more of the remaining time-slot channels to the second medium for data transmission; and dynamically adjusting a number of timeslot channels assigned to one of the first and second media during the data transmission to remain within limits of a desired level of service.

108.    Since at least the time of receiving the original complaint in this action, Defendants have also indirectly infringed and continue to indirectly infringe the '040 patent by inducing others to directly infringe the '040 patent.  *See* Ex. J, Ex. K, and Ex. O.  Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '040 patent by providing or requiring use of the Accused Instrumentalities. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '040 patent, including, for example, claim 1.  Such steps by Defendants included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendants are performing these steps, which constitute induced infringement with the knowledge of the '040 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '040 patent. Defendants' inducement is ongoing.

109.    Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of the '040 patent.  *See* Ex. L. Ex. M, and Ex. N.  Defendants have

contributed and continue to contribute to the direct infringement of the '040 patent by their customers, personnel, and contractors. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '040 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '040 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

110.    Defendants had knowledge of the '040 patent at least as of the date when they were notified of the filing of this action.

111.    Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

112.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

113.    Defendants' infringement of the '040 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

114.    FCS has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

115.    FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. FCS has and will continue to suffer this harm by virtue of Defendants' infringement of the '040 patent. Defendants' actions have interfered with and will

interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT IX: INFRINGEMENT OF U.S. PATENT NO. 7,260,153

116.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

117.    The USPTO duly issued the '153 patent on August 21, 2007 after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.  A true and correct copy of the '153 patent is attached as **Exhibit I**.

118.    The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

119.    The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

120.    FCS owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

121.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '153 patent.

122.    Defendants have directly infringed and continue to directly infringe one or more claims of the '153 patent by using, selling, offering to sell, providing, supplying, or distributing the Accused Instrumentalities.

123.    Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent.  For example, the Accused Instrumentalities used by Defendants perform a method for evaluating a channel of a multiple-input multiple-output ("MIMO") wireless communication system allowing two or more communication devices with multiple radiating elements to transmit parallel data sub-streams which defines a channel matrix metric of cross-talk signal-to-noise ("SNR") for the subs-streams, estimates the channel matrix metric, performs a singular value decomposition ("SVD") of the channel matrix metric estimate to calculate estimated channel singular values, and using the channel matrix metric and estimated channel singular values to calculate a crosstalk measure for the sub-streams.

124.    Since at least the time of receiving the original complaint in this action, Defendants have also indirectly infringed and continue to indirectly infringe the '153 patent by inducing others to directly infringe the '153 patent.  *See* Ex. J, Ex. K, and Ex. O.  Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '153 patent by providing or requiring use of the Accused Instrumentalities. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '153 patent, including, for example, claim 1.  Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the

Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendants are performing these steps, which constitute induced infringement with the knowledge of the '153 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '153 patent. Defendants' inducement is ongoing.

125. Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of the '153 patent. *See* Ex. L. Ex. M, and Ex. N. Defendants have contributed and continue to contribute to the direct infringement of the '153 patent by their customers, personnel, and contractors. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '153 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '153 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

126. Defendants had knowledge of the '153 patent at least as of the date when they were notified of the filing of this action.

127. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

128. Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

129.    Defendants' infringement of the '153 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

130.    FCS has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

131.    FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. FCS has and will continue to suffer this harm by virtue of Defendants' infringement of the '153 patent. Defendants' actions have interfered with and will interfere with FCS's ability to license technology. The balance of hardships favors FCS's ability to commercialize its own ideas and technology. The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

FCS hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

FCS requests that the Court find in its favor and against Defendants, and that the Court grant FCS the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

b.    A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '837 patent, '388 patent,

'040 patent, and '153 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '837 patent, '388 patent, '040 patent, and '153 patent by such entities;

c.    Judgment that Defendants account for and pay to FCS all damages to and costs incurred by FCS because of Defendants' infringing activities and other conduct complained of herein;

d.    Judgment that Defendants' infringements be found willful as to the '837 patent, '388 patent, '040 patent, and '153 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f.    That this Court declare this an exceptional case and award FCS its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285;

g.    That this Court enjoin Defendants' further infringement of the '837 patent, '388 patent, '040 patent, and '153 patent; and

h.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>May 17, 2022</u>          Respectfully submitted,

By:<u>/s/ James F. McDonough, III</u>

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
2590 Walnut Street, Suite 10
Denver, Colorado 80205
Telephone: (720) 820-3006
Email: matt@rhmtrial.com

James F. McDonough, III*
Jonathan R. Miller*
Travis E. Lynch*
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9505; -9517; -9514
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*

*Admitted to the Eastern District of Texas

**List Of Exhibits**

    A.  US Patent No. 6,647,270
    B.  US Patent No. 7,092,723
    C.  US Patent No. 7,206,837
    D.  US Patent No. 7,450,955
    E.  US Patent No. 7,536,189
    F.  US Patent No. 6,429,810
    G.  US Patent No. 7,742,388
    H.  US Patent No. 7,058,040
    I.  US Patent No. 7,260,153
    J.  Press Release dated October 19, 2017
    K.  Webpage: "Ryder Adds DriveCam Technology to Take Safety to New Heights"
    L.  Webpage: "Lytx DriveCam: Intelligent dash cam technology"
    M.  Webpage: "Best Fleet Management System for Vehicle Operations"
    N.  Webpage: "DOT Compliance Services & Software for Fleet Managers"
    O.  Press Release: "Lytx Announces 2022 Innovation Award Winner and Finalists"